UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SHIRLEY J. BOWERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-00633-SEB-MJD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Shirley J. Bowers ("Bowers") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For the reasons set forth below, the Magistrate Judge recommends that the District Judge **REVERSE** and **REMAND** the decision of the Commissioner.

**I.   Background**

Bowers filed an application for DIB on May 23, 2013, alleging an onset of disability date of May 13, 2013. [Dkt. 13-6 at 297.] Bowers subsequently amended her alleged onset date to January 1, 2011. [Dkt. 13-6 at 299.] Bowers alleges disability due to chronic obstructive pulmonary disease, fibromyalgia, on permanent oxygen, osteoporosis, arthritis, back injury, emphysema, restless leg syndrome, body pain, depression, and bowel problems.[1] [Dkt. 13-3 at

---
[1] Bowers and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 19; Dkt. 21.] Because these facts involved Bowers's confidential and otherwise sensitive medical

1

167.] Bowers' application was initially denied on July 16, 2013, and denied again on November 8, 2013, upon reconsideration. [Dkt. 13-4 at 181–188.] Bowers timely filed a written request for a hearing, which was held on July 15, 2015, and again on November 2, 2015, before Administrative Law Judge John H. Metz ("ALJ"). [*Id.* at 217–245.] The ALJ issued a decision on December 4, 2015, again denying Bowers's application for DIB. [Dkt. 13-2 at 59.] On January 25, 2017, the Appeals Council denied Bowers's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. [Dkt. 13-2 at 42.] Bowers timely filed her Complaint with this Court on March 1, 2017, which Complaint is now before the Court. [Dkt. 1.]

## II. Legal Standard

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment

---

information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and she is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform her past relevant work but she can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

### III. The ALJ's Decision

The ALJ first determined that Bowers has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. [Dkt. 13-2 at 64.] At step two, the ALJ determined that Bowers has "the following severe impairments: irritable bowel syndrome, hypothyroidism, chronic obstructive pulmonary disorder ("COPD"), fibromyalgia, gastroesophageal reflux disease, sleep apnea, and morbid obesity." [Dkt. 13-2 at 65.] However, at step three, the ALJ found that Bowers does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [*Id.*] In making this determination, the ALJ considered Listings 3.02A (Chronic Respiratory Disorders), 3.10 (Sleep Apnea), 4.00 (Cardiovascular System), 5.00 (Digestive System), 11.00 (Neurological), 12.00 (Mental Disorders), 5.06 (Inflammatory Bowel Disease), 5.08 (Weight Loss due to any Digestive Disorder), 1.00 (Musculoskeletal System), and 14.09 (Inflammatory Arthritis). [Dkt. 13-2 at 65–67.]

The ALJ next analyzed Bowers's residual functional capacity ("RFC"). He concluded that Bowers had the RFC to perform a range of medium work except:

> [T]he claimant can lift 50 pounds occasionally, 25 pounds frequently; and sit/stand/or walk for six of 8 hours each, for up to 2 hours at a time. She can occasionally use foot controls. The claimant can frequently bend or stoop; occasionally kneel or crawl; frequently climb stairs, occasionally climb ladders, ropes, or scaffolds. There are no restrictions for reaching forward or reaching overhead. The claimant can occasionally work around unprotected heights and moving machinery. There are no restrictions for fine or gross manipulative restrictions. Finally, she must avoid concentrated exposure to fumes, dusts, and high humidity.

[Dkt. 13-2 at 67.] In finding these limitations, the ALJ considered all of Bowers's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [*Id.*] At step four, the ALJ concluded that Bowers is able to perform past relevant work as a meat processing laborer or a

housekeeping/cleaner. [Dkt 13-2 at 71.] Thus, the ALJ concluded that Bowers was not disabled. [*Id.* at 72.] In the alternative, the ALJ proceeded to step five, at which time he received testimony from the vocational expert indicating that someone with Bowers's education, work experience, age, and RFC would be able to perform unskilled medium occupations such as a hand-packager. [*Id.* at 72–73.] Because this job existed in significant numbers in the national economy, the ALJ concluded that Bowers was not disabled. [*Id.* at 73.]

## IV. Discussion

Bowers asserts the ALJ committed multiple errors that require remand: (1) the ALJ erred in his analysis of the medical opinions; (2) the ALJ failed to mention and evaluate Bowers's use of supplemental oxygen prior to the September 30, 2013 date last insured; and (3) the ALJ erred in his evaluation of Bowers's credibility.

### A. Weight of Medical Opinions

Bowers first challenges the weight assigned by the ALJ to the medical opinions in the record. The Court addresses each argument relating to the ALJ's weight of medical opinions in turn below.

#### 1. *Dr. Fischer*

At Bowers's November 2015 hearing, medical expert Lee Fischer, M.D., provided oral opinions about Bowers's functional limitations. [Dkt. 13-2 at 85–89.] He later endorsed written summaries of his oral opinions. [Dkt. 14-13 at 49–52.] During the hearing, the ALJ informed Dr. Fischer and other witnesses that Bowers's date last insured was December 31, 2012.[3] [Dkt. 13-2 at 48.] Thus, Dr. Fischer opined his assessment of Bowers's functional limitations based on the belief that Bowers's date last insured was December 31, 2012. [*See* Dkt. 13-2 at 85–89; Dkt. 14-

---

[3] However, the ALJ later acknowledged in his written decision that Bowers's insured status actually expired nine months later on September 30, 2013. [Dkt. 13-2 at 24.]

13 at 49–52.] Specifically, Dr. Fischer noted that for the period before December 31, 2012, Bowers could:

> [L]ift and carry occasionally 50 pounds, frequently 25 pounds. She could sit, stand and walk about 6 hours in an 8-hour day and 2 hours at any one time. She could bend frequently, crouch frequently, drive frequently, crawl occasionally. Use foot controls frequently. She should avoid concentrated exposure to respiratory irritants and fumes. Humidity. She should avoid extremes of humidity. And ladder occasionally. Push/pull is the same as lift and carry. Reach no limitations. Ropes, scaffolds occasionally. Squat frequently. Climb stairs frequently. Stoop frequently. Temperature. Avoid extremes of temperatures. She could kneel occasionally. And no fine or gross manipulative limitations. And unprotected heights and hazards occasionally.

[Dkt. 13-2 at 87.] Dr. Fischer later clarified that these functional limitations applied up until November 2014, not just through December 2012. [Dkt. 13-2 at 88.] For the period after November 2014, Dr. Fischer opined that Bowers could:

> [L]ift and carry occasionally 10 pounds and frequently less than 10 pounds. She could sit at one time 2 hours and 6 hours in an 8-hour day. She could stand at one time 30 minutes in 2 hours and walk at one time 30 minutes, 2 hours in an 8-hour day. Bend occasionally, crouch occasionally, drive occasionally. Crawl never. Foot controls occasionally. Avoid concentrated exposure to fumes and avoid extremes in humidity. Ladders never. Push/pull is the same as lift and carry. Reach occasionally overhead bilaterally. Ropes, scaffolds never. Squat occasionally. Climb stairs occasionally. Stoop occasionally. Temperature. Avoid extreme in temperature. Kneel never. Fine and gross manipulation no limitations. Unprotected heights never. And hazards never.

[Dkt. 13-2 at 88.] The ALJ assigned "great weight" to the opinion of Dr. Fischer because Dr. Fischer was "an objective third party that reviewed the entire hearing record and was subject to cross-examination." [Dkt. 13-2 at 31.]

Bowers argues that Dr. Fischer's oral and written opinions are not substantial evidence supporting the ALJ's RFC assessment. [Dkt. 19 at 11–14.] Specifically, Bowers argues that Dr. Fischer's opinions are unreliable because his oral opinions differ in part from the written summaries of those opinions. [*Id.* at 11.] Bowers argues the written summaries do not address

6

Bowers's functional limitations at her September 30, 2013 date last insured. [*Id*.] In addition, Bowers argues that Dr. Fischer's oral opinions are "manifestly arbitrary and illogical." [*Id.* at 12.]

First, the Court notes that a close reading of Dr. Fischer's written and oral opinions show that there is little difference between the two. During his oral testimony, Dr. Fischer opined that Bowers could perform a reduced range of medium work for the period prior to December 31, 2012 (actually, prior to November, 2014). [Dkt. 13 at 87.] He then opined that currently, Bowers could perform a reduced range of light work. [Dkt. 13 at 88.] When the ALJ asked if the new restrictions "would all be from December 2012 forward," Dr. Fischer clarified that they were "[r]eally like 2014, and [he] has dated that for a consultative exam at 5F, which was November 2014." [Dkt. 13-2 at 88.] Thus, a reasonable reading of Dr. Fischer's testimony shows that, in his opinion, Bowers could perform a reduced range of medium work until November 2014 and she could perform a reduced range of light work from November 2014 onward. Thereafter, Dr. Fischer provided two one-page written summaries of his oral opinions—one for the reduced range of medium work for the period before December 31, 2012, and one for the reduced range of light work for the period after November 29, 2014. [Dkt. 14-13 at 49–52.] Because at the time of the hearing the parties were operating under the assumption that Bowers's date last insured was December 31, 2012, it is reasonable for Dr. Fischer to note on the written opinion corresponding the reduced range of medium work that it was for "prior to 12/31/12." [Dkt. 14-13 at 50.] To further reiterate his oral opinions, Dr. Fischer noted on the second written opinion corresponding the reduced range of light work that it was for "after 11/29/14." [Dkt. 14-13 at 52.] As a result, Dr. Fischer's written summaries confirm, rather than contradict, his oral testimonies.

7

Similarly, Bowers's argument that Dr. Fischer's written summaries do not address Bowers's functional limitations at her September 30, 2013 date last insured is without merit. During the hearing, Dr. Fischer clearly explained that, in his opinion, the medium-work limitations applied to Bowers not just as of December 2012 but through November 2014, over a year after her corrected date last insured in September 2013. [Dkt. 13-2 at 88.] Dr. Fischer further explained that Plaintiff's conditions had worsen by November 2014, thus, caused greater functional limitations. [*Id.*] Dr. Fischer then prepared a written opinion to summarize his testimony. Reading the hearing transcript as a whole, it is apparent that Dr. Fischer's note on the margin of his written summary that the medium-work limitations applied "prior to 12-31-12" reflected the parties' assumption at the time of the hearing that Bowers's date last insured was December 31, 2012, not the actual terminal date of that limitation, which was November, 2014. [*See* Dkt. 13-2 at 51–52.] This note by and of itself does not limit Dr. Fischer's written opinion about Bowers's functional limitations to that period.

Bowers next argues that Dr. Fischer's oral opinions are "manifestly arbitrary and illogical" and that they are not substantial evidence for the ALJ's RFC assessment. [Dkt. 19 at 12.] Specifically, Bowers argues that according to Dr. Fischer, "there was a marked or significant decline in [her] functional abilities in November 2014, i.e., contemporaneous with Dr. French's consultative examination." [Dkt. 19 at 12.] However, the date of Dr. French's examination is unrelated to any medical event that would worsen Bowers's conditions. [Dkt. 19 at 13.] Thus, Bowers argues that there is no basis to support Dr. Fischer's opinions. Consequently, Bowers argues that the ALJ's decision to give Dr. Fischer's opinions "great weight" is "not supported." [Dkt. 19 at 13.]

An ALJ must assign a medical opinion appropriate weight after considering relevant factors, including whether the opinion was supported by relevant evidence, whether the opinion was consistent with the record as a whole, and whether the medical source is familiar with other information in the claimant's case record. 20 C.F.R. § 404.1527(c). An ALJ only needs to "minimally articulate" his reasons for the weight he assigned to a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ "minimally articulated" his reasons – a very deferential standard that we have, in fact, deemed 'lax.'"). While the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

Here, the ALJ failed to minimally articulate his reasons for the weight he assigned to Dr. Fischer's opinions. The ALJ indicated he gave "great weight" to the opinions of Dr. Fischer because they were opinions from "an objective third party that reviewed the entire hearing record and was subject to cross-examination." [Dkt. 13-2 at 31.] However, as Bowers correctly pointed out, the ALJ did not identify any medical evidence that would support Dr. Fischer's opinion that there was a significant decline in Bowers's functional capacity from October to November 2014. Instead, the record shows that the only reason Dr. Fischer opined that there was a significant decline in Bowers's functional capacity in November 2014 is because of the consultative exam by Dr. Gregory French that occurred that month. [Dkt. 13-2 at 88.] The date (or month) of Dr. French's examination is unrelated to any medical event that would have worsened Bowers's conditions. Thus, Dr. Fischer's opinions are not supported by relevant evidence and they are not substantial evidence for the ALJ's RFC assessment. Because the ALJ relied on Dr. Fischer's

9

opinions to assess Bowers' RFC, the ALJ's opinion is not supported by substantial evidence. *See Nimmerrichter v. Colvin*, 4 F. Supp. 3d 958, 969 (N.D. Ill. 2013) (The flaws of the medical expert's opinion "doom" the ALJ's opinion).

An ALJ should "summon a medical expert if that is necessary to provide an informed basis for determining whether the claimant is disabled, but need not where the evidence is adequate to establish that the claimant is not disabled." *Cieszynski v. Colvin*, No. 13–2013, 2014 WL 3843220, at *2 (C.D. Ill. Aug. 5, 2014). Here, Dr. Fischer opined that there is a significant decline in Bowers's functional limitations in November 2014 but there is no adequate medical evidence to support his opinions. Given these circumstances, the Court concludes that this case should be remanded for the ALJ to request an updated opinion from a medical expert because such an opinion is necessary to provide an informed basis to determine whether Bowers was disabled.

### 2. *Dr. French*

In November 2014, Gregory French, M.D., medical consultative examiner, examined Bowers and opined that Bowers could perform less than sedentary work. [Dkt. 13-11 at 80–95.] The ALJ gave Dr. French's opinion "little weight" because "it was given based on the claimant's condition over a year after the date last insured, and therefore are not indicative of her condition prior to the date last insured." [Dkt. 13-2 at 31.] Bowers argues that the ALJ erroneously evaluated Dr. French's opinion because "[w]hether Dr. French opinions are probative of [Bowers's] condition at her September 30, 2013 date last insured must be based on the nature and course of [Bowers's] medical impairments, not the raw fact of the date of Dr. French's examination." [Dkt. 19 at 15.] This argument is not persuasive.

In *Eichstadt v. Astrue*, the Seventh Circuit held that the ALJ reasonably concluded that the testimony of the claimant's current physicians and medical records detailing her condition and diagnoses during the period post-dating her date last insured failed to support the claimant's claim of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008) ("Although the evidence tended to suggest that Eichstadt is *currently* disabled, and perhaps was disabled during the late 1990s, it provided no support for the proposition that she was disabled at any time prior to December 31, 1987.") (emphasis in original). Here, similar to the current medical opinions and records in *Eichstadt*, Dr. French's November 29, 2014 examination was conducted over a year after Bowers's date last insured. [Dkt. 13-11 at 80–95.] The ALJ reasonably gave Dr. French's opinion "little weight" because "it was given based on the claimant's condition over a year after the date last insured, and therefore are not indicative of her condition prior to the date last insured." [Dkt. 13-2 at 31.] As a result, the ALJ met his burden by minimally articulating his reasons for the weight he assigned to Dr. French's opinion.

Bowers next argues that the ALJ failed to acknowledge and evaluate Dr. French's opinion that Bowers could occasionally reach, handle, and finger. [Dkt. 19 at 16.] Bowers argues that by rejecting Dr. French's opinion as a whole, the ALJ did not build a logical bridge for any implicit rejection of Dr. French's opinions about Bowers's ability to reach, handle, and finger. [*Id.*] Bowers maintains that this error was harmful because the ALJ "did not cite any evidence that [Bowers] could perform any past relevant work or other work at step five if [Bowers] was restricted to occasionally reaching, handling, and finger." [*Id.*] As the Commissioner correctly pointed out, this argument is "merely recasting the same challenge to the ALJ's determination not to give Dr. French's opinions more weight generally." [Dkt. 21 at 18.] As a result, the Court will not address this issue.

### B. Supplemental Oxygen

In February 2012, prior to her date last insured September 30, 2013, Bowers was hospitalized for pneumonia and acute exacerbation of chronic obstructive pulmonary disease and later discharged with a prescription for oxygen at home at two (2) liters per minute. [Dkt. 13-10 at 23–24.] In May 2013, prior to her date last insured, Bowers was hospitalized for four days for shortness of breath. [Dkt. 13-14 at 11.] Her discharge summary indicated she used oxygen at two (2) liters per minute. [Dkt. 13-14 at 11.]

Both parties agree that the ALJ did not mention Bowers's use of supplemental oxygen prior to her date last insured in her RFC assessment. [Dkt. 19 at 16–17; Dkt. 21 at 19.] However, they disagree on whether the ALJ is required to discuss that evidence. [*See Id.*] An ALJ does not have to address every piece of evidence in his decision, but he "cannot ignore a line of evidence that undermines [his] conclusions, and [he] must trace the path of [his] reasoning and connect the evidence to [his] findings and conclusions. *Cooper v. Berryhill*, 244 F. Supp. 3d 834, 827 (S.D. Ind. 2017). The Court confines the scope of its review to the rationale offered by the ALJ. *Id.*

Here, evidence of Bowers's use of supplemental oxygen at two (2) liters per minute prior to her date last insured undermines the ALJ's conclusion that Bowers was not disabled. In addition, the ALJ failed to explain how Bowers's use of supplemental oxygen is consistent with his RFC assessment for a limited range of "medium" work. [Dkt. 13-2 at 27.] Therefore, on remand, the ALJ shall evaluate Bowers's use of supplemental oxygen and explain how the evidence is consistent with his conclusion.

### C. Credibility

Finally, Bowers asserts that the ALJ erred when he discounted Bowers's credibility based on her work activity, the types of her medical treatment, and her smoking habit.

An ALJ's credibility determinations are generally entitled to deference. *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016). However, the Court has "greater freedom to review credibility determinations based upon objective factors or fundamental implausibilities, rather than subjective considerations" such as the claimant's demeanor. *Id.*

The ALJ noted that the record reflects that Bowers made inconsistent statements regarding matters relevant to the issue of disability because the record shows work activity after the alleged onset date. [Dkt. 13-2 at 30.] The ALJ concluded that "[a]lthough the work activity did not constitute disqualifying substantial gainful activity, it does indicate that at times [Bowers's] daily activities have been somewhat greater than [she] has generally reported." [*Id.*] Under Social Security Ruling 96–7p, the ALJ's determination or decision regarding claimant credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p, 1996 WL 374186 (July 2, 1996). In *Zurawski v. Halter*, the Seventh Circuit held that it was not sufficient for the ALJ to conclude that Zurawski's complaints of disabling pain were "not entirely credible due to the inconsistencies with the objective medical evidence, and inconsistencies with daily activities" without explaining what the "inconsistencies" were. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The court reasoned that while the ALJ listed Zurawski's daily activities, those activities were "fairly restricted" and "not of a sort that necessarily undermines or contradicts a claim of disabling pain." *Id.* The *Zurawski* court further held that the ALJ "should have explained the 'inconsistencies' between Zurawski's activities of daily living (that were punctured with rest), his complaints of pain, and the medical evidence." *Id.*

13

Here, like the ALJ in *Zurawski*, this ALJ made a conclusory statement that "[a]lthough the work activity did not constitute disqualifying substantial gainful activity, it does indicate that at times [Bowers's] daily activities have been somewhat greater than [she] has generally reported." [Dkt. 13-2 at 30.] Unlike the ALJ in *Zurawski*, this ALJ did not even list the work activity that he considered. [*See* Dkt. 13-2 at 30.] *See also Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) ("We have recognized that even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits."); *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998) ("... employment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job.") On remand, the ALJ should explain the "inconsistencies" between Bowers's work activity and the reported severity of her impairments.

Similarly, the ALJ made a conclusory statement about Bowers's smoking habit. The ALJ stated that "despite the allegations regarding respiratory issues, the claimant continued to smoke about two packs per day against medical advice." [Dkt. 13-2 at 30.] Courts in this Circuit have repeatedly held that "it is unreliable to base a credibility determination on a claimant's failure to quit smoking" because of the addictive nature of smoking. *Carroll v. Barnhart*, 291 F. Supp. 2d 783, 796 (N.D. Ill. 2003) (citing *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000)). Therefore, on remand, the ALJ should not discredit Bowers credibility solely due to her smoking habit.

Finally, the ALJ made a conclusory statement about the type of medical treatment that Bowers received. The AL stated that "the claimant has not received the type of medical treatment one would expect for pain that is constant and almost emergent as described." [Dkt. 13-2 at 30.] On this issue, the ALJ did provide a glimpse into his reasoning. Specifically, he stated that "the claimant's conditions were generally treated by primary care providers and the record reflects

14

gaps in treatment, including months where she did not require additional treatment beyond her medications. She did consult a gastroenterologist; however, that was not until May 2013." [Dkt. 13-2 at 30.] However, the ALJ again failed to adequately explain the "inconsistencies" between Bowers's medical treatment and her alleged symptoms. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996). Moreover, in assessing credibility, "infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not have a good reason for the failure or infrequency of treatment. However, the ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (quoting SSR 96–7p, 1996 WL 374186 (July 2, 1996)). Here, although the ALJ drew a negative inference as to Bowers's credibility from the infrequent medical treatment of her symptoms, he did not question Bowers about her lack or infrequency of medical treatment. [Dkt. 13-2 at 30.]

Accordingly, upon remand, the ALJ must reassess Bowers's credibility and must adequately explain his credibility finding by discussing specific reasons supported by the record. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

### V. Conclusion

The standard of review of the Commissioner's denial of benefits is narrow. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Where, as here, the ALJ did not build a logical bridge between the evidence in the record and the ALJ's conclusion, the Court must remand. As the Court cannot find a complete logical bridge in the ALJ's five-step

15

sequential analysis, the Court recommends that the Commissioner's decision be vacated and **REMANDED** for further proceedings.

### Notice Regarding Exceptions

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n.7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Davis v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Dated: 29 DEC 2017

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

J. Frank Hanley, II
LAW OFFICES OF J. FRANK HANLEY II, INC.
jfrankhanley@jfrankhanley.com

Jill Z. Julian
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jill.julian@usdoj.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov